UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| EMPLOYERS INSURANCE COMPANY OF WAUSAU<br><br>Plaintiff,<br>v.<br><br>DAYBREAK EXPRESS, INC., et al<br><br>Defendants. | Civil Action No.<br><br>**OPINION AND ORDER ON DISCOVERY DISPUTE**<br><br>2:16-CV-4269-JLL-SCM<br><br>**[D.E. 25]** |

**Steven C. Mannion**, United States Magistrate Judge.

Before this Court is Plaintiff, Employers Insurance Company of Wausau's ("Employers") motion seeking to compel discovery from Defendants, Daybreak Express, Inc., Daybreak Fast Freight, Inc., Ansa Leasing Limited Liability Company and Newark Terminal Holdings Limited Liability Company ("Daybreak Defendants").[1] The Court heard argument regarding this motion on May 4, 2017 and has also considered the parties' respective submissions. For the following reasons, the Court grants in part and denies in part the motion.

I. **BACKGROUND AND PROCEDURAL HISTORY**[2]

In this breach of contract action, Employers provided workers' compensation and employer's liability insurance to the Daybreak Defendants.[3] Employers alleges that the Daybreak

---

[1] (ECF Docket Entry No. ("D.E.") 25). The Court will refer to documents by their docket entry number and the page numbers assigned by the Electronic Case Filing System.

[2] The allegations set forth within the pleadings and motion record are relied upon for purposes of this motion only. The Court has made no findings as to the veracity of the parties' allegations.

[3] (D.E. 1, at ¶ 14).

Defendants owe them $687,144 more in premium pursuant to the policies issued than what was paid.

The Daybreak Defendants are engaged in the interstate trucking business. Daybreak Express employed approximately 250 employee truck drivers during the relevant period.[4] Truck drivers are not paid overtime.[5] Each employee truck driver is assigned to a base location in New Jersey or North Carolina, but all over-the-road truckers are dispatched from New Jersey irrespective of their base, discharge points, or trips that originate outside New Jersey and North Carolina.[6] Daybreak Fast Freight is a transportation intermediary that procures the services of third-party carriers to transport freight for their customers.[7] Daybreak Fast Freight characterizes the third-party carriers as "independent businesses" over which it has "no control over how they move freight."[8] Using such carriers, it brokered approximately 14,000 shipments during the relevant period.[9]

The parties dispute whether Employers is entitled to additional premium based on amounts paid to third-party carriers, amounts attributable to reallocation to states other than New Jersey and North Carolina, and the addition of wages previously designated as subject to an overtime discount. Employers seeks certain information in discovery that it alleges will impact the premium

---

[4] (D.E. 34-1, Gill Certification ¶ 2).

[5] (*Id.* at ¶ 17).

[6] (*Id.* at ¶¶ 6, 9, 11).

[7] (*Id.* at ¶ 3).

[8] (*Id.* at ¶ 4).

[9] (*Id.* at ¶ 22).

calculation. The Daybreak Defendants object that this discovery is irrelevant, unduly burdensome, and that Employers does not have a right to that premium. They also argue that many documents were made available to Employers between 2013 and 2015 when they performed several audits to determine the amount of premium, and that the amount of premium is not at issue, but whether Employers has a right to an additional premium.[10]

## II. MAGISTRATE JUDGE AUTHORITY

Magistrate judges are authorized to decide any non-dispositive motion designated by the Court.[11] This District specifies that magistrate judges may determine all non-dispositive pre-trial motions which includes discovery motions.[12] Decisions by magistrate judges must be upheld unless "clearly erroneous or contrary to law."[13]

## III. LEGAL STANDARD FOR DISCOVERY

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[14]

---

[10] (*See* D.E. 30 at 13).

[11] 28 U.S.C. § 636(b)(1)(A).

[12] L. CIV. R. 72.1(a)(1); 37.1.

[13] 28 U.S.C. § 636(b)(1)(A).

[14] FED. R. CIV. P. 26(b)(1)-(2).

"Although the scope of discovery under the Federal Rules is broad, this right is not unlimited and may be circumscribed."[15]

Federal courts employ a burden-shifting analysis to resolve discovery disputes. A party seeking to compel discovery bears the initial "burden of showing that the information sought is relevant to the subject matter of the action."[16] If that burden is met, the objecting party must specifically show how each discovery request is objectionable."[17]

A. Relevance

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."[18] District courts must remain mindful that relevance is a broader inquiry at the discovery stage than at the trial stage.[19] Accordingly, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."[20]

B. Proportionality

The 2015 amendment to Rule 26 reinforces the shared obligation of the parties, counsel, and the court "to consider the proportionality of all discovery and consider it in resolving discovery disputes."[21] The amendment requires courts to consider the following factors when defining the

---

[15] *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

[16] *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).

[17] *Kannaday v. Ball*, 292 F.R.D. 640, 644 (D. Kan. 2013).

[18] Fed. R. Evid. 401.

[19] *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).

[20] FED. R. CIV. P. 26(b)(1).

[21] Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

scope of discovery: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, (6) and whether the burden or expense of the proposed discovery outweighs its likely benefit.[22] Proportionality determinations are made on a case-by-case basis with the aforementioned factors, and "no single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional."[23]

## IV. DISCUSSION AND ANALYSIS

The parties dispute whether Employers should be able to obtain discovery in three major categories of documents: (a) third-party carriers, (b) employee driver logs, and (c) overtime pay.

### A. Third-party Carriers

Employers seeks copies of "all bills, invoices, bills of lading and statements of account" for all "subcontracted trucker or 'third-party carrier'" that the Daybreak Defendants "contend are not includable by [Employers] in [the] premium base…."[24] It argues that this information is relevant to its breach of contract claim because the workers' compensation premium calculation must include the remuneration paid by the Daybreak Defendants "to subcontractors or 'third-party carriers'…." The Daybreak Defendants argue that the information sought is not relevant to Employers' claims because the third-party carriers are independent contractors not subject to workers' compensation.

---

[22] Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

[23] *Bell v. Reading Hosp.*, Civ. No. 13-5927, 2016 WL 162991, at *2 (E.D. Pa. Jan. 14, 2016) (Perkin, M.J.).

[24] (D.E. 25-5 at 9, Request No. 20).

Employers' position places the damages cart before the liability horse, and the Daybreak Defendants' position disregards Employers' burden to disprove the independent contractor status of the outside truckers. The court in *Trans American* held that ""where an insurer seeks to impose [premium charges on outside truckers] despite contracts which show independent contractor status, the burden shifts to it to disprove that status."[25] In *Trans American*, a plaintiff insurer sought to charge an insured trucking company additional premiums based upon the hired vehicle rule.[26] The status of the trucking company as an independent contractor was not in dispute.[27]

Where the status of an operator as an independent contractor is at issue, courts employ a fact sensitive analysis of each third-party carrier.[28] In addressing the distinction between employees and independent contractors, New Jersey courts have applied the "right to control" test and the "relative nature of the work" test.[29] The "control test" is "based on the notion that when an individual is an independent contractor, that person carries on a separate business and contracts to do work according to his or her own methods, without being subject to the control of an employer, except as to the results."[30] The "relative nature of the work" test is based on "whether

---

[25] *Trans American Trucking Service, Inc.*, 261 N.J. Super. at 330.

[26] *Aetna Insurance Company v. Trans American Trucking Service, Inc.*, 261 N.J. Super. 316, 321 (App. Div. 1993).

[27] *Id.*

[28] *See LM Insurance Corp. v. Kobys*, No. 16-2238(JBS/KMW), 2017 WL 1073352, at *12 (D.N.J. March 20, 2017); *Trans American Trucking Service, Inc.*, 261 N.J. Super. at 326.

[29] *LM Insurance Corp.*, 2017 WL 1073352, at *10; *Re/Max of N.J. v. Wausau Inc. Cos.*, 162 N.J. 282, 286 (2000) (The *Re/Max* court determined that real estate agents are employees based upon the control and the relative nature of the work tests. But it further found that New Jersey statutes expressly required brokers to "supervise and control sales agents" for the protection of the public and expressly defined "a real estate agent or salesperson as an employee of the broker."[29]

[30] *Id.*

the nature of the work done by the individual is an integral part of the regular business of the employer and/or whether the worker is economically dependent on the business."[31]

Thus, Employers will be required to disprove the independent contractor status of the outside truckers using the "right to control" and the relative "nature of the work" tests. What is unclear is how Employers intends to do this through the requested "bills, invoices, bills of lading and statements of account." Thus far, Employers' argument focuses on the presumptuous calculation of its potential unpaid premiums instead of liability for the premiums.

The Daybreak Defendants state, without dispute, that no third-party carrier has ever sought workers' compensation benefits under the Daybreak Defendants' policies.[32] *Trans American* aptly noted that in such circumstances an insurer has not established a basis to collect the additional premium absent such a claim, and can always seek the additional premium if a claim is made.[33] Stated otherwise, the insurer has no damage unless it can establish liability for an additional premium.

As for proportionality, the Daybreak Defendants argue that such discovery is not proportional to the needs of the case. They rely upon the Certification of Terrence P. Gill, Daybreak Express' Chief Financial Officer, to support their objection.[34] According to Mr. Gill, third-party carriers accounted for approximately 14,000 shipments during the policy period. He estimates that each shipment generated approximately 10 pages of invoices, bills of lading, and related documents amounting to approximately 140,000 pages of back-up documentation which is

---

[31] *Id.* (citing *Kertesz v. Korsch*, 296 N.J. Super. 146, 152 (App. Div. 1996).

[32] (D.E. 34-1, Gill Certification ¶ 25).

[33] *Trans American Trucking Service, Inc.*, 261 N.J. Super. at 330.

[34] (D.E. 34-1, Gill Certification).

currently stored in a warehouse. The Daybreak Defendants argue that production of these documents would take hundreds of hours to manually review and assemble.

Employers does not dispute this contention, but argues that because the Daybreak Defendants have contractual and statutory obligations to maintain many of these documents, any claim of burden or expense is undermined.

The Court finds that the question of whether the workers' compensation premium calculation is to include remuneration paid for the services of third-party carriers requires further discovery regarding the nature of the employee/independent contractor status of the third party carriers. The parties and the Court are jointly obligated "to secure the just, speedy, and inexpensive determination of every action and proceeding."[35] In this instance, the Court interprets that obligation and its authority to control the course of discovery to avoid burden and expense that is not yet justified. Employers shall obtain discovery that discredits the independent contractor defense before seeking evidence for the calculation of corresponding premiums. If that happens, the parties shall meet and confer about their next steps.

A subset of the third-party carries consists of approximately three owner operators.[36] As for the owner operators, the Daybreak Defendants do not dispute the premium charges, as they have included owner operators in their workers' compensation coverage and pay premiums for them.[37] Because the premium charges for the owner operators is not relevant to any issues in this case, the Court will deny discovery on the owner operators.

---

[35] FED. R. CIV. P. 1.

[36] (D.E. 34-1, Gill Certification ¶ 5).

[37] (D.E. 30 at 7).

B. Truck Driver logs

Employers seeks driver logs to confirm the state of assignment for the truck drivers. Employers argues that the calculation of exposure and the corresponding premium for workers' compensation policies for individuals located in different states is based on the laws of each state where the individuals are located. Because the employment of truck drivers is by nature transient, determining their state of assignment is more complex. Employers argues that its right to discovery of drivers logs is supported by the National Council on Compensation Insurance, which provides that "[t]he payroll of drivers, chauffeurs, and helpers for truckers shall be assigned to the state in which the base terminal from which they load, unload, store or transfer freight on a regular basis is located."[38] Employers further argues that it determined during its audit that drivers with out of state residences did not operate from the states where the Daybreak Defendants had a base terminal and facility, New Jersey and North Carolina. Employers seeks to allocate payroll to the truckers' state of residence, but the Daybreak Defendants argue that the allocations should be limited to New Jersey and North Carolina.

The Daybreak Defendants argue that such discovery on drivers' logs would be unduly burdensome as it would involve more than 250 drivers and 62,000 pages of driver logs. They further argue that these logs were made available to Employers during the audit process for review and inspection. Finally, they argue that although there are many discharge points for their drivers, the vast majority of trips commenced from the assigned state/location.

The Court agrees with Employers that information on driver logs is relevant to determining whether the drivers regularly traveled to a base terminal in New Jersey or North Carolina, or whether they spent the majority of their driving time in a specific state. Because this information

---

[38] (D.E. 25-1, at 9 (citing Crump Cert., Exh. F)).

will affect the premium dispute, this information is relevant. As these logs were made available to the Daybreak Defendants during audit, Employers shall again make these logs available to them. Subsequently, the parties shall meet and confer regarding the documents that the Daybreak Defendants shall produce. The Court will not order production of all 62,000 pages of driver logs at this time. Employers is directed to narrow its inquiry through using a representative sample or other means, after it completes its inspection.

    C. Employee Overtime records

Employers argues that the Daybreak Defendants have made inconsistent representations regarding overtime in order to reduce their premium payment. Employers argues that the Daybreak Defendants initially attributed over $1 million to overtime pay for truckers, and then later admitted that truckers did not receive any overtime pay. Because of these discrepancies, Employers seeks discovery regarding the manner and extent in which the Daybreak Defendants computed overtime.

The Daybreak Defendants argue that whatever discrepancies existed, it was cooperatively addressed during the audit process such that they were not afforded any improper premium discount. The Daybreak Defendants also argue that there is no suggestion that the total wages in the audit document were artificially reduced to lessen the compensation included in the premium calculation. Finally, they argue that they already produced overtime-related records for their non-driver employees during the audit process, and that there are no overtime-related records relating to drivers to produce.

The Court finds that because these records were already produced during audit, and no other records exist relating to drivers, it would not be unduly burdensome for the Daybreak Defendants to produce these records to Employers. Because overtime calculations may affect premium, the Court finds this information relevant.

## V. CONCLUSION

For the foregoing reasons, the motion to compel discovery is **granted in part and denied in part**. Employers' request for discovery regarding third-party carriers, owner operators, and ledgers is denied without prejudice. Employers' request for discovery regarding driver logs is granted in part. The Daybreak Defendants shall make their driver logs available for inspection, and the parties shall meet and confer regarding Employers' narrowed request for production thereafter. Employers' request for discovery regarding overtime records is granted.

**IT IS SO ORDERED**.



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

6/5/2017 10:04:01 AM

Original: Clerk of the Court
Hon. Jose L. Linares, U.S.D.J.
cc: All parties
    File